```
              UNITED STATES DISTRICT COURT
              MIDDLE DISTRICT OF FLORIDA
                    TAMPA DIVISION
```

CHRISTINA PAYLAN,

      Plaintiff,

v.                            Case No. 8:15-cv-2817-T-33MAP

FLORIDA BOARD OF MEDICINE, ET AL.,

      Defendants.

_____/

**ORDER**

This matter comes before the Court pursuant to pro se Plaintiff Christina Paylan's Verified Complaint (Doc. # 1) and Emergency Motion for a Temporary Restraining Order (Doc. # 3), which were filed on December 8, 2015. Paylan represents that she has served the Defendants with the Motion. (Doc. # 3 at 25). As explained below, the Court denies the Motion.

**I.  Background**

According to the Complaint, Paylan "is a licensed cosmetic surgeon who operated her own surgery center," Cosmetic Surgery of Tampa Bay, located at 3801 S. Macdill Avenue, Tampa, Florida 33611. (Doc. # 1 at ¶¶ 4, 20). Cosmetic Surgery of Tampa Bay was founded in 2006, and Paylan is the Chief Operating Surgeon. (Id. at ¶ 22).

**II. State Court Prosecutions**

Paylan indicates that in June of 2011, "a colossal

disruption was brewing in Plaintiff's fiance's personal life which directly affected Plaintiff, leading to the false arrest of Plaintiff." (Id. at ¶ 25). Paylan explains that the "false arrest of June 9, 2011 was followed by yet another false arrest on July 1, 2011." (Id. at ¶ 28). According to Paylan: "The driving force behind these arrests was a disgruntled family member, a brother-in-law of Dr. Paylan's fiancé, who was also a police officer with the Tampa Police Department. A family feud over money . . . $4.5 million dollars, had come to a head where the cop/brother-in-law was completely reduced to 'no stipend.'" (Id.). Paylan submits that the disgruntled family member retaliated by "stir[ring] up false 'narcotics' investigation among his cop buddies." (Id.).

Paylan remarks that it took "three years," but she ultimately "prevailed in both the June 9, 2011 and the July 1, 2011 false arrests and prosecutions when the Second District Court of Appeal issued a final order discharging the prosecution on February 3, 2014 in a writ of prohibition." (Id. at ¶ 29).

Paylan then initiated a lawsuit against "the two local prosecutors for malicious prosecution and Section 1983

2

violations." (Id. at ¶ 30).[1] Paylan contends that the prosecutors retaliated against her by once again initiating criminal charges and had Paylan "arrested for the third time in October of 2011." (Id. at ¶¶ 30-31). According to Paylan, that case was "nolle pros'd on February 20, 2014." (Id. at ¶ 31).

In response, in April of 2014, Paylan filed a state court lawsuit against the prosecutors in Hillsborough County Court. (Id. at ¶ 33). According to Paylan, "only eight days following the summons being served on the two prosecutors, criminal charges against Plaintiff were filed once again." (Id.). Ultimately, Paylan was tried by a jury and found guilty of controlled substance violations. (Id. at ¶ 37). Paylan has filed an appeal in the Second District Court of Appeal, which is currently pending. (Id. at ¶ 41). Paylan was sentenced to 364 days in county jail, of which she served 288. (Id. at n.2).

## II. Florida Board of Medicine Disciplinary Action

Meanwhile, the Florida Board of Medicine was completing its own investigation of Paylan and "[b]ased on the conviction

---

[1] The Court notes that Paylan filed suit in this Court against Attorney General Pam Bondi, Paylan's alleged "disgruntled" police officer relative Michael Quill, and others in case 8:15-cv-1366-CEH-TGW.

3

and conviction alone, on October 28, 2014, . . . issued a non-disciplinary emergency suspension pursuant to Fla. Stat. Section 456.074(1)(a)." (Id. at ¶¶ 34, 42). Thereafter, on November 10, 2014, the Florida Board of Medicine filed its Administrative Complaint, signaling that it would be seeking "the revocation of Plaintiff's medical license." (Id. at ¶ 44).

In September of 2015, Paylan appeared before an Administrative Law Judge, and moved to disqualify that Judge "pertaining to a lack of impartiality of the ALJ." (Id. at ¶¶ 44-45).[2] Ultimately, on October 23, 2015, "the ALJ issued its recommended order in which he recommended that Dr. Paylan be the subject of reportable discipline of suspension with mandatory disclosure for a period of two years, with one year credit for the non-disciplinary emergency suspension." (Id. at ¶ 48). According to Paylan: "No decision more absurd, more capricious, more arbitrary and more irrational could be delivered." (Id. at 47). On December 4, 2015, the Florida Board of Medicine adopted the entirety of the ALJ's

---

[2] In her Motion for a TRO, Paylan indicates that her request for disqualification of the ALJ is "currently pending" in the "State Appellate Court," which she anticipates "will mandate a re-do of the Final Hearing before another ALJ." (Doc. # 3 at 20).

4

recommended order. (<u>Id.</u> at ¶ 49).

### III. <u>Verified Complaint and Motions for Injunctive Relief</u>

On December 8, 2015, Paylan initiated this action by filing a four-count Verified Complaint against the following Defendants: Florida Board of Medicine, Department of Health, Dr. Bernardo Fernandez in his individual capacity, Dr. Sarvam Terkonda in his individual capacity, Dr. James Orr in his individual capacity, Dr. Steven Rosenberg in his individual capacity, Dr. Magdelena Averhoff in her individual capacity, Dr. Jorge Lopez in his individual capacity, Dr. Merle Stringer in his individual capacity, Dr. Gary Dolin in his individual capacity, Dr. Enrique Ginzburg in his individual capacity, Brigitte Goersch in her individual capacity, and Joy Tootle, JD in her individual capacity.

In count one of the Complaint, Paylan sues the "Individual Board Defendants in their Individual Capacities" for damages under 42 U.S.C. § 1983 pursuant to the Fourteenth Amendment of the United States Constitution. Paylan asserts that she had a "property interest in her medical license," that the Defendants (members of the Florida Board of Medicine):

> Acting under color of state law, with their badge of authority to regulate, discipline, investigation Plaintiff's conduct within the scope of her

5

> profession, the Board Defendants, each and every one of them, knowingly and intentionally concealed their favorable administrative findings which were exculpatory in nature with respect to the criminal charges relating to [a specific patient]. Knowing that Plaintiff was being wrongfully charged with prescription fraud . . ., knowing that Plaintiff did not commit any prescription fraud . . ., the Board Defendants and the DOH Defendant intentionally sat back, and watched Plaintiff get falsely convicted, much like cows grazing in a field, senselessly and without purpose for anything other than to satisfy their own appetite.

(Doc. # 1 at ¶ 54).

In count two of the Verified Complaint, also filed under § 1983, Paylan seeks damages (including punitive damages) for violation of the Equal Protection Clause "as to Florida Board of Medicine and All Individual Board Defendants." Paylan alleges that the Defendants "singled out Plaintiff, acted with ill-will and wanton disregard toward Plaintiff, and with sheer vindictiveness." (Id. at ¶ 86). She also contends that "[t]he Board Defendants, as powerful public officials, picked on Plaintiff . . . discriminating against Plaintiff as a 'class of one.'" (Id. at ¶ 79). Among other accusations, Plaintiff states that "[t]he Board has a pattern of leveraging the sustaining of charges against its licensees unless the licensees agree not to pursue attorneys' fees against the Board in cases where the licensees are wrongfully and arbitrarily accused and sanctioned." (Id. at ¶ 80).

6

In count three, leveled against all Defendants, Paylan seeks damages and other relief for "conspiracy to interfere with civil rights" pursuant to 42 U.S.C. § 1985 and 18 U.S.C. § 241, alleging, inter alia, that "[t]he Board Defendants and the DOH conspired with each other and with local state prosecutors for the purpose of impeding, hindering, obstructing or defeating the due course of justice in the criminal proceedings . . . resulting in the fundamentally defective jury verdict convicting Plaintiff." (Id. at ¶ 92). In the same vein, in count four, asserted against the "Individual Board Defendants," Paylan seeks damages for fraud and fraudulent inducement:

> The Board Defendants engaged in fraud against Plaintiff. Knowing that Plaintiff had not engaged in any sanctionable conduct and that the administrative investigation has clearly exposed and exonerated Plaintiff, the Board Defendants concealed their administrative findings, stripping Plaintiff [of] the reasonable reliance upon such crucial and pivotal exonerating information.

(Id. at ¶ 106).

In connection with the filing of the Verified Complaint, Paylan filed a Motion for Temporary Restraining Order, which also contains a request for a preliminary injunction. She seeks an Order temporarily restraining the Florida Board of Medicine and its members from instituting a "disciplinary

suspension of Plaintiff's medical license" or instituting "any other reportable discipline which requires mandatory disclosure." (Doc. # 3 at 23). In the alternative, she seeks an Order "reinstating Plaintiff to active status as a practicing physician and surgeon." (Id. at 24).

### IV. Rule 65 Analysis

A party seeking a Temporary Restraining Order must establish: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs any harm relief would inflict on the non-movant; and (4) that entry of relief would serve the public interest." Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1223, 1226 (11th Cir. 2005). As the Plaintiff, Paylan bears the heavy burden of persuasion as to each factor. Canal Auth. of Fla. v. Callaway, 489 F.2d 567, 573 (5th Cir. 1974). Furthermore, "even if [the movant] establish[es] a likelihood of success on the merits, the absence of a substantial likelihood of irreparable injury would, standing alone, make [] injunctive relief improper." Siegel v. Lepore, 237 F.3d 1163, 1176 (11th Cir. 2000).

Here, the Court is reluctant to comment in any way on the likelihood of success on the merits prong of the analysis.

While the factual allegations, which describe multiple levels of criminal and administrative proceedings are complex, at the core of Paylan's case is her contention that she was wrongly adjudicated guilty in a criminal trial. That adjudication of guilt led to the disciplinary suspension of her license to practice medicine. Paylan submits that she filed a direct appeal of the judgment in the criminal case to the Second District Court of Appeal. To the Court's knowledge, that appeal is still pending.

Common sense and principles of comity dictate that the Court refrain from deciding whether Paylan will likely succeed on the merits of this case. To do so, the Court would be required to analyze the validity of her criminal conviction – which is the very same issue that the Second District Court of Appeal is currently examining on a direct appeal.

The next consideration is whether Paylan faces an irreparable injury. Paylan posits that she stands to suffer damage to her reputation if she is sanctioned with a disciplinary suspension of her license. Paylan explains:

> If the imposition of the disciplinary suspension proceeds as it will if this Court does not intervene, then Plaintiff will, forever, be required to disclose this disciplinary action even when it is vacated. Disclosure of such a discipline will permanently scar Plaintiff's reputation in the medical profession, make her a

9

>  second rate surgeon instantly even if she gets to disclose that the disciplinary suspension was vacated. The mere disclosure will close down numerous medical and surgical job opportunities for Plaintiff where Plaintiff will be denied privileges to hospitals and ambulatory surgery centers where she would have been granted otherwise.

(Doc. # 3 at 20). The Eleventh Circuit has held that "grounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill." Ferrellgas Partners, L.P. v. Barrow, 143 F. App'x 180, 190 (11th Cir. 2005). Although that case involved trademark infringement, as opposed to surgical services, its holding should apply with equal measure to the reputation of a physician.

However, an examination of the relative burdens on the parties and the interest of the public weighs against granting the requested Temporary Restraining Order. Paylan has provided the Court with correspondence from the Florida Board of Medicine, the ALJ's opinion, and other exhibits evidencing the procedures that are in place to regulate physicians in Florida. The Florida Statutes, specifically Chapter 456, provide a detailed mechanism for addressing the licensing of physicians and list specific events, such as certain criminal convictions, that trigger the suspension of a medical license. While judicial review may be appropriate in some circumstances, this Court is not in a position to alter a

decision made by the Florida Board of Medicine (after a thorough investigation, peer review, and ALJ proceedings over a period of multiple years) on an emergency basis and without the benefit of a response from the Defendants.  Indeed, it would place an undue burden on the Florida Board of Medicine if the Court were to alter the course of the on-going administrative proceedings against Paylan.

The Court also finds that the public interest would not be advanced in the slightest if this Court were to usurp the Florida Board of Medicine's decision with respect to Paylan's license to practice medicine and suspension thereof.  In denying Paylan's request for a TRO altering the status of her disciplinary suspension, the Court finds <u>Woodbury v. McKinnon</u>, 447 F.2d 839 (5th Cir. 1971), enlightening.  Dr. Woodbury was denied surgical privileges at a county hospital.  Dr. Woodbury sued the hospital board claiming denial of due process, and the hospital prevailed.  The Fifth Circuit highlighted "the restraint that must be exercised in judicial consideration of challenges" of this kind as follows:

> No court should substitute its evaluation of such matters for that of the Hospital Board. It is the board, not the court, which is charged with the responsibility of providing a competent staff of doctors.  The Board has chosen to rely on the advice of its Medical Staff, and the court cannot surrogate for the Staff in executing this

11

>      responsibility.  Human lives are at stake, and the
>      governing board must be given discretion in its
>      selection so that it can have confidence in the
>      competence and moral commitment of its staff.  The
>      evaluation of professional proficiency of doctors
>      is best left to the specialized expertise of their
>      peers, subject only to limited judicial
>      surveillance.

Id. at 843.

This Court recognizes that the grant or denial of hospital privileges, the matter discussed in Woodbury, differs from the matter at hand in this case, the suspension of a medical license.  However, the Court draws from the Woodbury opinion to underscore the public safety issue that must be brought to the forefront in this case.  The public's interest in access to competent and ethically sound physicians must be steadfastly safeguarded.  While Paylan has demonstrated that she will be subject to heightened disclosure requirements if the Court does not immediately halt the Board of Medicine's disciplinary suspension of her medical license, the Court would be hard-pressed to find that her interest in not disclosing such a sanction outweighs paramount public safety concerns implicated by the licencing of physicians.  The request for a TRO is accordingly denied.

The Court notes that Paylan also requests the issuance of a Preliminary Injunction. (Doc. # 3 at 22).  The Court refers

that request to the Magistrate Judge for the issuance of a Report and Recommendation.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Plaintiff's Emergency Motion for a Temporary Restraining Order (Doc. # 3) is **DENIED.**

(2) The Court hereby refers Plaintiff's request for a Preliminary Injunction (Doc. # 3) to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) for the issuance of a Report and Recommendation.

(3) Plaintiff is directed to immediately serve a copy of this Order on all Defendants.

**DONE** and **ORDERED** in Tampa, Florida, this <u>9th</u> day of December, 2015.

*[signature]*
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE