UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHRISTINA PAYLAN,

      Plaintiff,

v.                                        Case No. 8:15-cv-2817-T-33MAP

FLORIDA BOARD OF MEDICINE, ET
AL.,

      Defendants.
_____/

## ORDER

This matter comes before the Court pursuant to Defendants' Motion to Stay Proceedings (Doc. # 63), filed on January 21, 2016.  Pro se Plaintiff Christina Paylan filed a Response in Opposition (Doc. # 72) on February 8, 2016.  For the reasons that follow, the Court grants the Motion by staying this case during the appeal of her criminal case.

**I.**  **Background**

Paylan is a cosmetic surgeon who operated her own surgery center, Cosmetic Surgery of Tampa Bay, located at 3801 S. Macdill Avenue, Tampa, Florida 33611. (Doc. # 1 at ¶¶ 4, 20).  Cosmetic Surgery of Tampa Bay was founded in 2006, and Paylan is the Chief Operating Surgeon. (Id. at ¶ 22).  Paylan has temporarily been stripped of her license to practice medicine, and in this action she sues the Board of Medicine, the Department of Health, and the individual Board members for constitutional violations and other damages.  To understand the nature of these proceedings, and why it is appropriate to

stay the prosecution of this case, the Court will discuss the litigation leading to the filing of the present suit.

**A.    State Court Prosecutions**

Paylan indicates that in June of 2011, "a colossal disruption was brewing in Plaintiff's fiance's personal life which directly affected Plaintiff, leading to the false arrest of Plaintiff." (Id. at ¶ 25). Paylan explains that the "false arrest of June 9, 2011 was followed by yet another false arrest on July 1, 2011." (Id. at ¶ 28). According to Paylan: "The driving force behind these arrests was a disgruntled family member, a brother-in-law of Dr. Paylan's fiancé, who was also a police officer with the Tampa Police Department. A family feud over money . . . $4.5 million dollars, had come to a head where the cop/brother-in-law was completely reduced to 'no stipend.'" (Id.). Paylan submits that the disgruntled family member retaliated by "stir[ring] up false 'narcotics' investigation[s] among his cop buddies." (Id.).

Paylan remarks that it took "three years," but she ultimately "prevailed in both the June 9, 2011 and the July 1, 2011 false arrests and prosecutions when the Second District Court of Appeal issued a final order discharging the prosecution on February 3, 2014 in a writ of prohibition." (Id. at ¶ 29).

2

Paylan then initiated a lawsuit against "the two local prosecutors for malicious prosecution and Section 1983 violations." (<u>Id.</u> at ¶ 30). Paylan contends that the prosecutors retaliated against her by once again initiating criminal charges and had Paylan "arrested for the third time in October of 2011." (<u>Id.</u> at ¶¶ 30-31). According to Paylan, that case was "nolle pros'd on February 20, 2014." (<u>Id.</u> at ¶ 31).

In response, in April of 2014, Paylan filed a state court lawsuit against the prosecutors in Hillsborough County Court. (<u>Id.</u> at ¶ 33). According to Paylan, "only eight days following the summons being served on the two prosecutors, criminal charges against Plaintiff were filed once again." (<u>Id.</u>). Ultimately, Paylan was tried by a jury and found guilty of controlled substance violations. (<u>Id.</u> at ¶ 37). Specifically, Paylan was convicted of two felony counts in Case No. 14-CF-005764: Obtaining Controlled Substance by Fraud and Fraudulent Use of Personal Information. Paylan has filed an appeal in the Second District Court of Appeal.(<u>Id.</u> at ¶ 41). That appeal is still pending.

Paylan was sentenced to 364 days in county jail, of which she served 288. (<u>Id.</u> at n.2).

## B.  <u>Florida Board of Medicine Disciplinary Action</u>

Meanwhile, the Florida Board of Medicine was completing its own investigation of Paylan and "[b]ased on the conviction and conviction alone, on October 28, 2014, . . . issued a non-disciplinary emergency suspension pursuant to Fla. Stat. Section 456.074(1)(a)." (<u>Id.</u> at ¶¶ 34, 42).  Thereafter, on November 10, 2014, the Florida Board of Medicine filed its Administrative Complaint, signaling that it would be seeking "the revocation of Plaintiff's medical license." (<u>Id.</u> at ¶ 44).

In September of 2015, Paylan appeared before an Administrative Law Judge, and moved to disqualify that Judge "pertaining to a lack of impartiality of the ALJ." (<u>Id.</u> at ¶¶ 44-45).[1]  Ultimately, on October 23, 2015, "the ALJ issued its recommended order in which he recommended that Dr. Paylan be the subject of reportable discipline of suspension with mandatory disclosure for a period of two years, with one year credit for the non-disciplinary emergency suspension." (<u>Id.</u> at ¶ 48).  According to Paylan: "No decision more absurd, more capricious, more arbitrary and more irrational could be

---

[1] In her Motion for a TRO, Paylan indicated that her request for disqualification of the ALJ is "currently pending" in the "State Appellate Court," which she anticipates "will mandate a re-do of the Final Hearing before another ALJ." (Doc. # 3 at 20).

delivered." (<u>Id.</u> at 47).

On December 4, 2015, the Florida Board of Medicine adopted the entirety of the ALJ's recommended order. (<u>Id.</u> at ¶ 49). Paylan indicates that the "Final Order pursuant to its December 4, 2015 Board Meeting held in Jacksonville, Florida place[d] Dr. Paylan's medical license on suspension for an additional year until December 22, 2016." (Doc. # 81 at 1).

Paylan "filed a notice of administrative appeal on January 21, 2016, contesting the propriety of any discipline against Plaintiff's medical license given that the Board of Medicine had previously considered the identical issues relating to Patient CM and ruled that Plaintiff had not engaged in a any violation of the Medical Practice Act, thus precluding any sanction on Plaintiff's medical license on the same issue now." (<u>Id.</u>). That appeal is also pending in the Second DCA. On March 22, 2016, the Second DCA temporarily relinquished jurisdiction over the administrative appeal to the Board of Medicine for a period of 60 days. (Doc. # 86-1 at 13).

## II.  <u>Verified Complaint and Motion for TRO</u>

On December 8, 2015, Paylan initiated this action by filing a four-count Verified Complaint against the following Defendants: Florida Board of Medicine, Department of Health,

5

Dr. Bernardo Fernandez in his individual capacity, Dr. Sarvam Terkonda in his individual capacity, Dr. James Orr in his individual capacity, Dr. Steven Rosenberg in his individual capacity, Dr. Magdelena Averhoff in her individual capacity, Dr. Jorge Lopez in his individual capacity, Dr. Merle Stringer in his individual capacity, Dr. Gary Dolin in his individual capacity, Dr. Enrique Ginzburg in his individual capacity, Brigitte Goersch in her individual capacity, and Joy Tootle, JD in her individual capacity.

In count one of the Complaint, Paylan sues the "Individual Board Defendants in their Individual Capacities" for damages under 42 U.S.C. § 1983 pursuant to the Fourteenth Amendment of the United States Constitution.  Paylan asserts that she had a "property interest in her medical license," that the Defendants (members of the Florida Board of Medicine):

> Acting under color of state law, with their badge of authority to regulate, discipline, [and] investigate Plaintiff's conduct within the scope of her profession, the Board Defendants, each and every one of them, knowingly and intentionally concealed their favorable administrative findings which were exculpatory in nature with respect to the criminal charges relating to Patient CM. Knowing that Plaintiff was being wrongfully charged with prescription fraud with respect to Patient CM, knowing that Plaintiff did not commit any prescription fraud with respect to Patient CM as the administrative investigation showed, the Board Defendants and the DOH Defendant intentionally sat

> back, and watched Plaintiff get falsely convicted,
> much like cows grazing on a field, senselessly and
> without purpose for anything other than to satisfy
> their own appetite.

(Doc. # 1 at ¶ 54).

In count two of the Verified Complaint, also filed under § 1983, Paylan seeks damages (including punitive damages) for violation of the Equal Protection Clause "as to Florida Board of Medicine and All Individual Board Defendants." Paylan alleges that the Defendants "singled out Plaintiff, acted with ill-will and wanton disregard toward Plaintiff, and with sheer vindictiveness." (Id. at ¶ 86). She also contends that "[t]he Board Defendants, as powerful public officials, picked on Plaintiff . . . discriminating against Plaintiff as a 'class of one.'" (Id. at ¶ 79). Among other accusations, Paylan states that "[t]he Board has a pattern of leveraging the sustaining of charges against its licensees unless the licensees agree not to pursue attorneys' fees against the Board in cases where the licensees are wrongfully and arbitrarily accused and sanctioned." (Id. at ¶ 80).

In count three, leveled against all Defendants, Paylan seeks damages and other relief for "conspiracy to interfere with civil rights" pursuant to 42 U.S.C. § 1985 and 18 U.S.C. § 241, alleging, inter alia, that "[t]he Board Defendants and the DOH conspired with each other and with local state

prosecutors for the purpose of impeding, hindering, obstructing or defeating the due course of justice in the criminal proceedings . . . resulting in the fundamentally defective jury verdict convicting Plaintiff." (Id. at ¶ 92). In the same vein, in count four, asserted against the "Individual Board Defendants," Paylan seeks damages for fraud and fraudulent inducement:

> The Board Defendants engaged in fraud against Plaintiff. Knowing that Plaintiff had not engaged in any sanctionable conduct and that the administrative investigation has clearly exposed and exonerated Plaintiff, the Board Defendants concealed their administrative findings, stripping Plaintiff [of] the reasonable reliance upon such crucial and pivotal exonerating information.

(Id. at ¶ 106).

Paylan seeks $7 million in compensatory damages and $12 million in punitive damages "for intentional, arbitrary, capricious and irrational acts committed by each and every individual Defendant against Plaintiff, depriving Plaintiff wholly from the right to enjoy the practice of medicine." (Doc. # 1 at 36).

In connection with the filing of the Verified Complaint, Paylan filed a Motion for Temporary Restraining Order requesting that the Court bar the Florida Board of Medicine and its members from instituting a "disciplinary suspension of Plaintiff's medical license" or instituting "any other

8

reportable discipline which requires mandatory disclosure."
(Doc. # 3 at 23).   In the alternative, she sought an Order
"reinstating Plaintiff to active status as a practicing
physician and surgeon." (Id. at 24).

After careful consideration, the Court denied Paylan's
request for a TRO December 9, 2015, explaining:

> While the factual allegations, which describe
> multiple levels of criminal and administrative
> proceedings are complex, at the core of Paylan's
> case is her contention that she was wrongly
> adjudicated guilty in a criminal trial.   That
> adjudication of guilt led to the disciplinary
> suspension of her license to practice medicine.
> Paylan submits that she filed a direct appeal of
> the judgment in the criminal case to the Second
> District Court of Appeal.   To the Court's
> knowledge, that appeal is still pending.
> Common sense and principles of comity dictate
> that the Court refrain from deciding whether Paylan
> will likely succeed on the merits of this case.   To
> do so, the Court would be required to analyze the
> validity of her criminal conviction - which is the
> very same issue that the Second District Court of
> Appeal is currently examining on a direct appeal.

(Doc. # 4 at 9).

III. **Motion to Stay**

On January 21, 2016, Defendants filed a Motion requesting
that the Court "stay this action until plaintiff's appellate
process attacking the verdict and conviction have been
exhausted." (Doc. # 63 at 2).   In response, Paylan contends
that "such stay of these proceedings pending the outcome of
the appellate review is absurd, contrary to law, and is not

9

warranted in any way." (Doc. # 72 at 4). Paylan also asserts
that "the outcome in the criminal appeal will have no impact
on this civil litigation." (Id. at 5).

Although her response in opposition to the Motion to Stay
characterizes her claims as "strictly about damages for
violations of principles of res judicata and collateral
estoppel," her Verified Complaint tells another story. (Doc.
# 72 at 3). For instance, Paylan asserts that Defendants
violated the Equal Protection Clause and "caused Dr. Paylan an
unprecedented reputational damage by sitting quietly and
pretending like Dr. Paylan had committed a medical crime when
Defendants knew this to be untrue based on their own
investigation and findings." (Doc. # 1 at ¶ 89(b)). In
addition, Paylan's Complaint alleges that the "Board
Defendants and the DOH conspired with each other and with
local state prosecutors for the purpose of impeding, hindering
obstructing or defeating the due course of justice in the
criminal proceedings which took place in July 2014 against
Plaintiff in state court under Case No. 14-CF-005764,
resulting in the fundamentally defective jury verdict
convicting Plaintiff." (Id. at ¶ 92). Although her Complaint
contains varied counts, it is a section 1983 civil rights
complaint and it springs from her allegedly unlawful arrest

10

and conviction in a criminal case.

Due to the overlap between Paylan's assertions in this case and the issues presented in her criminal appeal, the Court determines that this case should be stayed and administratively closed pending the final outcome of her appeal in her criminal case.

Accordingly, it is hereby

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1) Defendants' Motion to Stay Proceedings (Doc. # 63) is **GRANTED**.

(2) This case is **STAYED AND ADMINISTRATIVELY CLOSED** pending the final resolution of Paylan's criminal appeal.

(3) The parties are directed to file a status report on or before August 9, 2016, and every 90 days thereafter. In addition, the parties are directed to advise this Court upon the completion of the appellate proceedings in the criminal case.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>11th</u> day of May, 2016.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE